Good morning. Good morning, Your Honours. May I plea to the Court? My name is Raina Tanner, counsel on behalf of Petitioners Raul and Blanca Pineda. At this time, I'd like to reserve two minutes' rebuttal. Sure. Keep your eye on the clock, please. Mr. and Mrs. Pineda were previously represented by an attorney who was subsequently convicted and an attorney who was subsequently disbarred. The Pinedas should be afforded the basic right to have their immigration matter heard on the merits. The Board of Immigration Appeals committed two main errors in the present matter. Counsel, can I just ask you one question? I can't remember whether we issued a special order on this or not, but assuming there was ineffective assistance of counsel, what's your response to the time bar? As I understand it, their petition for asylum wasn't filed until nine years after they entered the United States, so even if there was IEC, how can they show prejudice? Well, as Your Honor is stating, there is a one-year time bar under 8 U.S.C. section 1158, and Your Honor did order on May 30th. I thought we had issued an order, so what's your response to my question? Well, Mr. Pineda did actually enter the United States in 1984, but he left on December 18th of 1999, and he returned lawfully with his special agricultural worker card, also known as the SAW, in early January 2000. Now, that's still not within the exact one year because he didn't file until June of 2001. However, there are two exceptions to the one-year time bar. The first is there's extraordinary circumstances, and the second is changed circumstances. Mr. Pineda, again, lived here, but since his last date of entry is the one-year time bar, he had to file within one year. There are extraordinary circumstances because his stay was authorized, so he didn't file for asylum because he was authorized to remain in the United States as a pending SAW applicant. So, doesn't the government – oh, excuse me, no, go ahead. Yeah, no, you asked the question, Judge Ratchett. It's the same question. Hasn't the government waived that issue by not raising it, and is it waivable or is it jurisdictional? Yes, Your Honor. I mean, as for prejudice, we do need to show that there would be some prejudice, that the outcome of proceedings might have been different, and we did, in fact, show that. The one-year was not raised by the government. However, even if it was raised, we meet our burden. But is it waived because the government failed to raise the time bar issue? I would argue that – Or is it not a waivable issue? I would argue that it would be waived. We would make that argument. However, because we do need to show prejudice, we do need to show that the asylum application might have been granted. So I'm still trying to figure out how the exception excuses the time bar, because without regard to the question of whether the government waived the issue, if he went back to an IJ and you don't dispute that he filed more than a year after the last date of entry, then how can you show that he was prejudiced by the ineffective assistance? Well, under 8 U.S.C. Section 1158 A2D, there's an acceptance of the one-year filing requirement if there's changed or extraordinary circumstances. In his case, there were extraordinary circumstances because he was in lawful status, so there was no need to file within the one year. Under 208.4, it states that a person who is in lawful status – it constitutes extraordinary circumstances justifying their failure to file. Okay. And honestly, if there wasn't – those extraordinary circumstances are in the statute and in the 8 CFRs. And the factual basis, as you say, is that because they were in status, that is the extraordinary circumstance? Yes. Okay. And honestly, we know he was still in status because the convicted notario told him, oh, you don't need to worry about that. There's prejudice in this case because Mr. McGuire withdrew his applications for asylum, withholding and relief under the CAT. I'm sorry. Would you say that again? I didn't hear that. Mr. McGuire. Terrence McGuire, the disbarred attorney. Right. I know who Mr. McGuire is. Right. We all know Mr. McGuire. I know. Yeah. He withdrew their applications for relief under asylum, withholding and relief under the CAT. Okay. But that establishes ineffective assistance. I'm still hung up on prejudice. Well, the prejudice, the prejudice element would be because the outcome might have been different. The outcome might have been different. He would have had his applications heard on the merits and he might have been granted. That was where the prejudice element lies. Okay. I hear your argument. Well, yes, Your Honor. Honestly, if there's any kind of chance you don't withdraw it, the government has tried to say that it's a strategical decision. It's not. He could have had all of your applications heard on the merit, your applications for relief, for asylum. Well, if he was here under the special status that you were talking about, was that special status still in effect at the time he withdrew the petition? No, Your Honor. It was not. And the problem, in this case, it's a confidential, you know, under the LIFE Act, when everything was signed under the LIFE Act, they were given two separate alien numbers and the other one is protected under the confidentiality. However, we can tell you that it was denied on April 12th of 2001. What confidentiality? What are you talking about? In removal proceedings or deportation proceedings, they couldn't bring any information used that was filed as part of their SAW or any legalization application to remove you. You could use it for purposes of, like, fraud or criminal cases, but not in removal proceedings. There was a confidential provision in place. So in this case, there were two alien numbers. He has another alien number. And we know that it was pending at the time and it was denied at the time that Mr. McGuire withdrew the application for asylum. At the time of the 01 Master Hearing and March 03 Merits Hearing, the Pineda family had had a young son who had been kidnapped. And thankfully, they were able to pay his release. But despite the kidnapping, when he told Mr. McGuire about it, his response was, that does not matter to your case. Mr. Pineda said he feels he is the victim of his own inability to understand what was happening. He has acknowledged that. But if they would have proceeded on the asylum application, they could have presented evidence of the kidnapping, of his fear of returning to Guerrero in Mexico, however, he was not able to do so. The board thought that there was no different evidence of changed circumstances from the argument that had originally been made, that it was essentially the same argument. What's your response to the board's observation? Well, there's two separate arguments there. First, is that he qualified for the time and he was prejudiced by Mr. McGuire because he withdrew the application. Now, even if this court does not find there was prejudice, there's changed country conditions now that justify his... Okay, but what's different? That's my question. What happened that was different from the argument that was made about country conditions originally, or which could have been made at the time Mr. McGuire withdrew the application? At the time that he withdrew, they owned a small parcel of land and this young son had been kidnapped because there was a belief that if you own land, you'll pay the ransom. Now, at the time, therefore, he qualified for asylum. There's a basis, a particular social group, and there was persecution on account of that social group. And honestly, we don't have to decide today whether or not he would have won, just that the outcome might have been different, and it might have. But the board looked at that and said, essentially, this is the same argument relying on, I guess, the same social group formulation that was originally argued, and that's not a change if you're just renewing the argument. Isn't that what the board said? Yes, but there was several different things that have happened. In the record from 2008 to 2014 submission, they had bought several other land, property, businesses. The Pineda family had become well-known in Guerrero. And there was a 2000... They had more land than they had before. And businesses, and... But the argument was before that they were landowners and that that was the basis for the social group. Well, in addition, the 2013 and 2014 kidnappings, beatings, and extortion of the family. There's two other Pineda... It happened before, had it not? 2013 and 2014, yes, one had been kidnapped before, but now they're becoming more frequent. We even had to submit a supplement to the motion to reopen showing that in 2014, another brother had been kidnapped, extortion fees have gone up, and most importantly, they threatened the wives and children. That hadn't been done before. They're now threatening the Pineda wives and children as well as the young men in the family. And as your honors said, as Judge Hellman said in Agonifer, that it's whether the circumstances have changed sufficiently. They had changed sufficiently. At this time, I'd like to reserve my remaining time for rebuttal. All right. Thank you. Please, the court. My name is Jennifer Bowen. I'm here on behalf of Respondent, the U.S. Attorney General. I don't know if your honors would like for me to start with the order that you issued on May 30th, the timeliness issue. I should like an answer at some point. I don't know if it... Understood. Do it now, do it in the middle, do it at the end. Just give me an answer at some point. Okay. Well, we can address it.  We can address it now. Okay. It is an issue that the board did not address. However, at most, the Respondent's position would be that this is harmless error, where petitioners would bear the burden of proof in showing that they were prima facie eligibility at the time they sought to reopen their asylum application. And that without demonstrating that they could meet that statutory requirement, that it be circumstances to justify the untimely filing, they couldn't show, they didn't meet their burden to show prejudice. So while perhaps the board could have addressed that issue, instead the board found that they failed to demonstrate prejudice on other issues, or rather... So the government's not really relying on the one-year time bar, right? No, your... And you're arguing it under prejudice that the BIA was correct in finding that there was prejudice resulted from the ineffective assistance of counsel. Yes, your honor, that the board concluded that the asylum application that was withdrawn failed to allege any kidnappings, failed to assert that the family had owned land, or that there was any basis upon which that they had suffered or would suffer persecution based on a protected ground. And with that being said, they couldn't demonstrate the requisite prima facie eligibility to show prejudice based on any ineffective assistance of counsel, to show that had the application not been withdrawn, they could possibly have prevailed on their claim as necessary to demonstrate prejudice. In examining the question of prejudice, do we look to the claims as asserted in the original asylum application that was withdrawn, or do we look to the facts that could also have been alleged if it hadn't been withdrawn? So in other words, if incompetent counsel prepares a deficient asylum application, then we don't look to the deficient application in determining prejudice, do we? No, your honor, but you would look to the motion to reopen that petitioner's file before the agency, to what was before the agency when the agency issued this decision. And the motion to reopen itself does not assert that the McGuire erred by failing to amend the application. That doesn't come forward until petitioner's opening brief before this court. So that wasn't an argument. Explain to me why it was not an error for McGuire to have withdrawn an application. It seems to me that the petitioners had a valid claim for an asylum application, and we don't have to decide whether they would prevail on that. It's just whether they may have prevailed on that relevant facts of their asylum claim to the IJ's attention. I understood, your honor. The standard would not be that they necessarily would have prevailed, but that they could have prevailed. And what the board found is that what was submitted to them on the motion to reopen was not sufficient to show, in light of the asylum application that was withdrawn and the testimony that was presented to the agency, that they could have prevailed. So can you explain to me, under these facts and our case law, why their claim would have been so deficient that they could not have prevailed, that they had no chance of prevailing? I can only, we can, as the board, I apologize if I'm not answering your honor's questions, but the board looked at what they came forward with and said, okay, you're coming forward in this motion to reopen and you're saying that you were a landowner and that your brother was kidnapped. However, your asylum application never mentioned that you were a landowner or that your brother was kidnapped. And moreover, you testified before this agency and you're not addressing that testimony at all. That testimony never asserted any kidnappings. That testimony never asserted any land ownership. So how is it that given what we have in the record here, you could possibly prevail and found that they could not demonstrate prima facie eligibility to demonstrate prejudice? Let me see if I can summarize your position. You're saying that on the motion to reopen, filed by a different attorney than Mr. McGuire, the board looked at the motion to reopen and it didn't say anything about these facts that are now urged before us on appeal. So the agency did not abuse its discretion when there was no showing made to it by a prejudice based on McGuire's ineffective assistance? Yes, Your Honor. And then additionally, on the separate and independent grounds of reopening, the board looked at changed country. So separately from ineffective assistance of counsel, petitioners sought reopening based on changed country conditions. And here again, the board looked at the motion to reopen that was filed, which attached a number of documents at Exhibit H, but didn't explain those documents or assert how those documents supported a conclusion of changed country conditions in the motion to reopen and found that petitioners failed to demonstrate that their situation had significantly changed since they last appeared before the agency and therefore could not demonstrate the requisite changed circumstances to justify reopening their removal proceedings. And given, again, I apologize if I haven't said this earlier, their motion to reopen was both time barred and numerically barred. So petitioners bore the burden of proof here across the board. But both of those bars are subject to equitable tolling, isn't that correct? Yes, Your Honor, once petitioners demonstrate the equitable tolling. So they had the burden of proof to show an effective assistance of counsel or change country conditions to equitably toll or waive those bars. If Your Honors have no further questions, Respondent will rest on his brief. All right. Rebuttal. As Judge Nguyen noted, it was a deficient application presented by a deficient notario and withdrawn by a deficient attorney. Okay, but what's your response to the government's rejoinder that in support of the motion to reopen, none of the arguments that you're making before us now were set before the board? Yes, and in fact, we did argue that there were change country conditions. We did present 30 pages of evidence of land and business ownership. We did argue that those were change conditions. I thought the board looked at Exhibit H and said, look, we have problems with the translation. There's no explanation as to what the significance of these documents are. How can we say the board abused its discretion if a coherent argument wasn't made to the agency as to what these exhibits purported to show? Well, in the motion to reopen, we did in fact argue that there was change conditions and we said that there was land ownership change and we presented evidence of the land ownership change. But you've got to explain. What the board is saying is you gave us 30 pages, I assume in Spanish, with some sort of a translation that the board had difficulty discerning. Doesn't counsel have to do more in order to demonstrate to the agency that the evidence in fact supports the legal argument that you're making? We also, in addition to the 30 pages in English, which were translated from Spanish, we also have Mr. Pineda's declaration detailing and explaining the businesses owned, the kidnappings, how long his brother was beaten and held for ransom, how much money they're paying in extortion fees. And none of this is ever going to be presented. What do we do with the fact that he testified and never said anything about that at his earlier merits hearing? And again, he said he's the victim of his own inability to understand what was happening. Mr. McGuire told him, it doesn't matter to your case. Well, counsel told him it was irrelevant, right? Yeah. Based on that advice, he didn't raise those issues. Exactly, Your Honors. And there was no, I mean, the term particular social group is such a confusing term that even as immigration attorneys are constantly seeking this court's helping us shape that confusing how- Our case law doesn't help much. I mean, I'm being candid here, but it's a difficult concept to articulate with particularly with regard to wealthy landowners who may be the target of organized criminal extortions and kidnapping. Yeah. And he had no reason to doubt that. I mean, there's no way that he could understand when even us immigration attorneys don't understand sometimes. So had he had proper counsel, they would have submitted his application for asylum and let the immigration judge decide. That's what the merits are for. As Your Honor said, the application was deficient. That's why we needed a merits hearing. And so we just want that chance to have his day in court. We've got your argument in your overtime. Thank you very much.
judges: Tallman, Nguyen, Bennett